IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| RONALD T. CRAWFORD and PAULA M. CRAWFORD, <br><br> Plaintiffs, <br><br> v. <br><br> ALETHES, LLC, FLAGSHIP CLOSING SERVICES, LLC; WACHOVIA BANK FKA FUND, and FICTITIOUS DEFENDANTS A, B, and C, being those unknown individuals, firms, partnerships, corporations or other entities, both singular and plural, who participated or assisted in the wrongful acts alleged in this complaint, and whose true names and legal identities are otherwise unknown at this time, but will be added by amendment when ascertained, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   CIVIL ACTION NO. 3:07-cv-359-WHA |

## DEFENDANTS' OPPOSITION TO MOTION TO REMAND

Defendants Alethes, LLC ("Alethes") and Wachovia Bank, National Association ("Wachovia") (collectively "Defendants") hereby submit this opposition to Plaintiffs Ronald T. Crawford and Paula M. Crawford's ("Plaintiffs") motion to remand. The merits of Plaintiffs' complaints against Wachovia, while disputed, are irrelevant for the purposes of the present motion to remand. The only relevant inquiry at this step is the viability of the claims against Flagship Closing, LLC ("Flagship").

### I. INTRODUCTION

On or about March 6, 2007, Plaintiffs filed a complaint in the Circuit Court of Macon County, asserting breach of contract, negligence, fraud, suppression, and interference with

1572506 v1

contract causes of action against Defendants and Flagship, the non-diverse defendant, based solely upon Wachovia's alleged breach of contract for not paying Plaintiffs $16,000 pursuant to the real estate contract at issue. (*See* Plaintiff's Complaint).

The only factual allegations asserted in Plaintiffs' complaint, however, were entirely based upon their contract with Wachovia. Plaintiffs did not make any allegations against Flagship outside the scope of Plaintiffs' contract with Wachovia. *Id.* Moreover, Plaintiffs made a settlement demand in excess of $100,000 on April 4, 2007. Thus, on April 27, 2007, Defendants removed the present action to this Court on diversity jurisdiction grounds, demonstrating that the only non-diverse Defendant, Flagship, had been fraudulently joined, and that the amount in controversy exceeded $75,000.[1]

On May 25, 2007, Plaintiffs filed a motion to remand. In a futile attempt to somehow connect Flagship to the alleged wrongdoing and stave off a finding of fraudulent joinder Plaintiffs asserted a variety of conclusory and unsubstantiated allegations. As proven below, Plaintiffs fail to assert, as a matter of law, any valid claims against Flagship. In the underling transaction at issue, Flagship was the agent of the lending entity, Alethes, and thus owed absolutely no legal duty to Plaintiffs. Additionally, Flagship is not party to the contract made the basis of Plaintiffs' lawsuit, namely the contract between Plaintiffs and Wachovia. Flagship has been fraudulently joined in the present action, and its Alabama citizenship should be disregarded, creating complete diversity between Plaintiffs and all properly joined Defendants. Accordingly, Flagship is due to be dismissed from this action with prejudice. As such, diversity jurisdiction requirements under 28 U.S.C. § 1332 have been satisfied, and Plaintiffs' motion to remand is due to be denied.

---

[1] Plaintiffs concede in their motion to remand the amount in controversy aspect of Defendants' removal pursuant to 28 U.S.C. § 1332.

## II. ARGUMENT

### A. FLAGSHIP WAS FRAUDULENTLY JOINED BECAUSE PLAINTIFFS WAIVED ANY AND ALL CLAIMS AGAINST FLAGSHIP WHEN THEY AGREED TO THE TERMS AND CONDITIONS OF THE HUD-1 SETTLEMENT STATEMENT.

The basis of Plaintiffs' entire complaint arises from the alleged failure of Wachovia to pay Plaintiffs $16,000 pursuant to the December 30, 2005 real estate contract. (*See* Plaintiff's Complaint, ¶¶ 6-8). In their motion to remand, Plaintiffs attach as Exhibit "A" the "Counter Offer/Addendum", which states that "Seller will **credit** buyer up to $4,000 in closing costs, Repair Costs of $16,000, Earnest deposit to be $150." While irrelevant to Plaintiffs' motion, Defendants note that the evidence submitted by Plaintiffs never states that they are to receive $16,000 in funds, but rather they will receive a credit of $16,000 at the closing. Plaintiffs contend, however, that "as the closing agent", Flagship "owed" several duties to Plaintiffs during the closing process, and that Flagship somehow "defrauded" Plaintiffs by omitting the $16,000 payment from the HUD-1 statement.

Even assuming arguendo that Flagship somehow owed Plaintiffs a duty, Plaintiffs waived all of their claims against Flagship when Plaintiffs signed the February 22, 2006 HUD-1 Settlement Statement ("HUD-1"). (*See* Plaintiffs' February 22, 2006 HUD-1 Settlement Statement, attached as Exhibit "A"). Under Alabama law, a "waiver occurs when a party voluntarily surrenders or relinquishes a known right, benefit, or advantage." *Nunnelley v. GE Capital Information Technology Solutions*, 730 So. 2d 238, 241 (Ala. Civ. App. 1999) (*citations omitted*). "A party's intent to waive a right may be established by any acts of the party that would manifest waiver of his rights ... This intention to waive a right may be found where one's course of conduct indicates the same or is inconsistent with any other intention. *Id*. (*citations omitted*).

1572506 v1

3

Plaintiffs clearly demonstrated, as a matter of law, their intent to waive any claim to the $16,000 credit by signing the HUD-1 statement that unmistakably indicated that they would not receive a payment or credit in the amount of $16,000. The HUD-1 does not include any reference or entry that Plaintiffs were to receive a $16,000 credit from Wachovia. *Id.* Moreover, by signing the HUD-1, Plaintiffs affirmed that the HUD-1 represented the correct disbursements and payments:

> I HAVE CAREFULLY REVIEWED THE HUD-1 SETTLEMENT STATEMENT AND TO THE BEST OF MY KNOWLEDGE AND BELIEF, IT IS A TRUE AND ACCURATE STATEMENT OF ALL RECEIPTS AND DISBURSEMENTS MADE ON MY ACCOUNT OR BY ME IN THIS TRANSACTION. I FURTHER CERTIFY THAT I HAVE RECEIVED A COPY OF THIS HUD-1 SETTLEMENT STATEMENT.

Exhibit "A". The form also specifically notes that it is "furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown." *Id.* Accordingly, to the extent that any claim existed, Plaintiffs waived any an all claims as a matter of law against Flagship by signing the HUD-1 which lacked any reference to a $16,000 payment as alleged in their complaint.

Plaintiffs' contention that as "first time home buyers, [they] were unaware of what items were supposed to be included on the settlement statement" is irrelevant under Alabama law because they were imputed with the knowledge of the HUD-1. *Foremost Ins. Co. v. Parham*, 693 So. 2d 409 (Ala. 1997). Under existing law, Plaintiffs' signatures on the HUD-1 unequivocally establish that the Plaintiffs understood and accepted that the HUD-1 represented the correct distributions for the closing, and thus their clear intent to waive the $16,000 credit is not an issue for the jury. Consequently, Plaintiffs cannot assert that they were not "on notice" that they "would not be receiving the $16,000 owed from the sales proceeds to them by

Defendant." (*See* Plaintiffs' motion to remand, pp. 2-3); *see generally Foremost Ins. Co*, 693 So. 2d 409.[2]

Moreover, pursuant to their own motion to remand, Plaintiffs state that they only "knew they were to receive $16,000," but in fact, they actually were required to pay $2,159.91 pursuant to the HUD-1. (Exhibit "A"). By actually paying money at the closing, instead of receiving their "repair monies" as alleged in the complaint, Plaintiffs were clearly on notice and to the extent a claim ever existed, manifested a clear intent to waive any claim to a $16,000 credit. Flagship is fraudulently joined in this matter because Plaintiffs, as a matter of law, waived all claims against Flagship by (1) signing the HUD-1 statement in which they acknowledged that they would not receive $16,000 from the transaction, and (2) actually paying $2,159.91 instead of receiving funds at the closing.

### B. FLAGSHIP WAS FRAUDULENTLY JOINED IN THE PRESENT ACTION BECAUSE FLAGSHIP ONLY OWED A DUTY TO DEFENDANT ALETHES, LLC.

Plaintiffs' complaint is entirely based on the December 30, 2005 contract between Plaintiffs and Wachovia. Neither Alethes nor Flagship are parties to the contract. Plaintiffs initially allege in their complaint that Flagship was the "agent" of Wachovia during the real estate closing. (Plaintiffs' Complaint, ¶ 10). Plaintiffs now concede that Flagship was never the agent of Wachovia, and instead assert that Flagship "was selected by Defendant Wachovia as the closing agent for the real estate loan." (*See* Plaintiffs' motion to remand, p. 2). As demonstrated below, Wachovia's "alleged" selection of Flagship in no way creates any legal duties between Plaintiffs and Flagship. Accordingly, Plaintiffs fail to state any valid claims against Flagship as

---

[2] Defendants also note that Plaintiffs incorrectly alleged that they were entitled to a $16,000 disbursement. The contract on which Plaintiffs base their claims only references a $16,000 **credit** at the closing.

a matter of law because Plaintiffs were not in contractual privity with Flagship, and Flagship never owed nor breached any duties to Plaintiffs.

### 1. Flagship Did Not Owe Any Duties To Plaintiffs Because Flagship Was Alethes' Agent.

Flagship was the agent of the Alethes, the mortgage company making the loan to Plaintiffs. Thus any duties owed by Flagship were owed only to Alethes. Plaintiffs, however, allege for the first time in their motion to remand that Flagship owed Plaintiffs a series of duties during the closing process: (1) "duty to follow terms and conditions of the contract between" Plaintiffs and Wachovia; (2) "duty to review the terms and conditions of the sales contract ... to ensure proper receipt and disbursement of the sales proceeds"; and (3) "duty to prepare all closing documents because of its special knowledge in preparing real estate settlement documents." $Id.^3$

Flagship, however, could not breach any duties to Plaintiffs because it only owed a duty to Alethes during the closing process:

> The closing attorney also performs other services for the Bank besides certifying the title: title examination, recordation of the mortgage instruments, and preparation of notes, deeds, financing statements, security agreements, and loan agreements. To be sure, these services also provide a benefit to the borrower. And it is the borrower who makes the final selection of an attorney and pays for his services. Nevertheless, it is the reliance on the attorney to fulfill the Bank's legal obligation to take only first liens which distinguishes between services which otherwise benefit the bank and the borrower equally. That the Bank makes only a partial choice of its attorney does not alter that the choice belongs to the Bank. Payment for the attorney's services ... merely represents an allocation of the costs of the loan. The borrower remains free to hire an attorney to represent his own interests in processing the loan application

---

[3] The law is clear on two (2) things: (1) that Flagship owed only duties to Alethes, not Plaintiffs, and (2) Plaintiffs are charged with knowledge of the documents they signed (HUD-1) which reflect the receipts and disbursements are correct (and that they have no claims).

*U.S. v. Paine*, 750 F. 2d 844, 854 (11th Cir. 1985). Flagship only owed a duty to Alethes to ensure that the mortgage and real estate transaction were closed pursuant to the closing instructions provided by Alethes. Consequently, Flagship never owed any duty to Plaintiffs during the transaction, and thus Flagship could not have breached any duties to Plaintiffs.

    **2.    Alethes Controlled The Terms Of The HUD-1 As The Lending Institution.**

Moreover, as the lending entity, Alethes is in exclusive control of the terms of the HUD-1, and it can choose not to fund the mortgage if it does not agree with the terms of the sales contract. Alethes would never fund a mortgage with a $16,000 credit as alleged by Plaintiffs. (*See* David Swecker's Affidavit, attached as Exhibit "B"). The $16,000 credit would be tantamount to mortgage fraud as Alethes would be under secured in the mortgage. As such, Alethes would never allow two parties to inflate a sales price so that the buyer could retain a large portion of the mortgage proceeds. *Id.* Moreover, Flagship, as the closing agent, owed a duty to adhere to the Alethes' closing instructions, which stated that the $16,000 credit could not be included in the closing. (*See* Alethes' closing instructions, attached as Exhibit "C"). Alethes forbid the inclusion of any $16,000 credit in the closing, and thus Plaintiffs cannot assert a claim against Flagship for preparing the HUD-1 without the $16,000 credit.

In their motion to remand, Plaintiffs cannot rely upon their conclusory and unsupported allegations of liability to overcome Defendants' fraudulent joinder argument where the Defendant has provided undisputed evidence contradicting said allegations. *See Legg v. Wyeth*, 428 F.3d 1317, 1324 (11th Cir. 2005) ("When the Defendants' affidavits are undisputed by the Plaintiffs, the court cannot then resolve the facts in the Plaintiffs' favor based solely on the

unsupported allegations in the Plaintiffs' complaint.").[4] Pursuant to Dave Swecker's affidavit, Alethes has offered specific testimony negating Plaintiffs' conclusory allegations that Flagship breach a series of duties during the closing when in fact Flagship simply followed the closing instructions of its principal, Alethes. Consequently, Flagship was fraudulently joined in this matter because Plaintiffs cannot assert any valid claims against Flagship for the alleged breaches of the nonexistent duties.

### C. FLAGSHIP WAS FRAUDULENTLY JOINED IN THE PRESENT ACTION BECAUSE PLAINTIFFS FAILED TO ASSERT ANY CLAIMS AGAINST FLAGSHIP UPON WHICH RELIEF CAN BE GRANTED.

Even though Plaintiffs now admit that Flagship was not Wachovia's agent, and it is established as a matter of law that Flagship owed no duties to Plaintiffs during the closing, Plaintiffs still assert that they have four (4) viable claims against Flagship: (1) Flagship "intentionally and unjustifiably interfered with said contract or business relationship by not adhering to the terms and conditions of said contract"; (2) Flagship was negligent in that it failed "to adhere to the terms of the contract" between Wachovia and Plaintiffs; (3) Flagship committed fraud by omitting "from the closing statement the fact that Plaintiffs should receive either a credit or cash for $16,000"; and (4) suppressed the fact that Plaintiffs "would not receive the $16,000 repair costs." (*See* Plaintiffs' motion to remand, pp. 4-7). As further demonstrated below, none of these claims can viably be asserted against Flagship based on Plaintiffs' contract with Wachovia, and thus Flagship is due to be dismissed from this matter because it was fraudulently joined.

---

[4] *See also Moses v. Allstate Indemnity Co.*, 2006 WL 1361131, at *4 (M.D. Ala.)(quoting *Badon v. RJR Nabisco, Inc.*, 224 F. 3d 382, 393-94 (5th Cir. 2000)(emphasis in original)("'[W]e resolve factual controversies in favor of the nonmoving party, but *only* when there is an actual controversy, that is when both parties have submitted evidence of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*'").

### 1. Plaintiffs' Claim Against Flagship for Intentional Interference With Their Wachovia Contract Fails As A Matter Of Law.

Plaintiffs contend that there "is no dispute that a contract existed between Plaintiffs and Defendant Wachovia for the sale of real property with Defendant paying to Plaintiffs the sum of $16,000 for repairs." *Id.* at p. 4. Under Alabama law, an intentional interference with a contract claim requires Plaintiffs to establish "(1) the existence of a contract; (2) knowledge of that contract on the part of the defendant; (3) intentional interference with that contract by the defendant; and (4) damage resulting from the interference." *Wehby v. Turpin*, 710 So. 2d 1243, 1251 (Ala. 1998).

There is no question that a contract existed between Plaintiffs and Wachovia, and that Flagship, as the closing agent for Alethes, knew of the contract's existence. However, as mentioned above, (1) the sales contract at issue never called for the disbursement of $16,000 to Plaintiff, but rather a $16,000 **credit** at the closing, and (2) Plaintiffs confirmed the accuracy of the HUD-1 at closing which clearly reflected no $16,000 credit. (*See* Exhibit "A" attached to Plaintiffs' motion to remand). Plaintiffs clearly misinterpret the sales contract in both their complaint and motion to remand as there were no monies to be distributed to Plaintiffs after the sale. *Id.* Flagship was never intended to procure and distribute $16,000 to Plaintiffs, and thus the "interference" as alleged by Plaintiffs in this matter was an impossibility under the contract. Plaintiffs' claim fails as a matter of law because the "contractual interference", as alleged in their complaint, concerns specific performance by Wachovia that was never contemplated or required by the contract.

Plaintiffs, nonetheless, still contend that Flagship "had sole control over how the terms were to be performed and was solely responsible for Defendant Wachovia not complying with the contract terms." (*See* Plaintiffs' motion to remand, p. 5). Flagship, however, as described

above, had no control over the performance of the contract between Plaintiff and Wachovia. Instead, Flagship was bound by the closing instructions provided by its client Alethes, which specifically stated that no credit was allowed. (Exhibit "C"). Flagship owed no duty to Plaintiffs or Wachovia and could in no way be responsible for Wachovia's alleged "failure" to comply with the terms of the sales contract.

### 2. Plaintiffs' Claim for Negligence Against Flagship Fails As A Matter Of Law.

Without citing a single case, code section, regulation, or other authority, Plaintiffs argue that Flagship has "a duty to review the sales contract," prepare the "closing statement," and "ensure that all funds are collected and disbursed in accordance with the sales contract between the buyer and seller." Under Alabama law, a negligence claim must plead (1) a duty owed to Plaintiffs, (2) a breach of said duty to Plaintiffs, and (3) said breach proximately caused damages to Plaintiffs. *See Zanaty Realty, Inc.. v. Williams*, 935 So. 2d 1163, 1167 (Ala. 2005). Defendants note initially that Plaintiffs provide absolutely no basis for any of the "alleged" duties owed by Flagship. Flagship, as a matter of law, only owed a duty to follow the closing instructions of Alethes. *See U.S. v. Paine*, 750 F. 2d 844.

Even though Flagship never owed a duty to Plaintiffs, they still allege that "Flagship breached said duty when it failed to collect and disburse the $16,000.00 agreed to be given to the Plaintiffs by Defendant Wachovia." (*See* Plaintiffs' motion to remand, p. 5). As described above, Wachovia never owed a contractual duty to Plaintiffs to "disburse $16,000" to Plaintiffs pursuant to the 2005 sales contract. The contract itself only provided for a $16,000 credit. Flagship is not the proximate cause of Plaintiffs' alleged damages as Plaintiffs do not alleged that Flagship received monies from Wachovia that it failed to transfer to Plaintiffs. Accordingly, Plaintiffs' negligence claim against Flagship, as alleged in their complaint, fails for three (3)

reasons: (1) Flagship only owed a legal duty to Alethes, (2) the alleged duty to disburse the $16,000 does not exist pursuant to the contract on which it is based, and (3) Flagship was not the proximate cause of Wachovia's alleged failure to transfer $16,000 to Plaintiffs as alleged in their complaint.

### 3. Plaintiffs' Claim for Fraud Against Flagship Fails As A Matter Of Law.

Plaintiffs allege that "Flagship made a misrepresentation of a material fact when it failed to include the $16,000 owed to Plaintiffs by Defendant Wachovia and further failed to properly disburse the funds in accordance with the contract between Plaintiffs and Defendant Wachovia." (*See* Plaintiffs' motion to remand, p. 6). Under Alabama law, a fraud claim requires Plaintiffs to establish (1) a false representation, (2) that the representation involved a material fact, (3) that Plaintiffs relied on the misrepresentation, and (4) Plaintiffs suffered damages based on the misrepresentation. *Baker v. Metropolitan Life Insur. Co.*, 907 So. 2d 419, 420 (Ala. 2005). Plaintiffs must also assert that their "reliance was reasonable in light of the facts surrounding the transaction in question." *Id.* at 421. Initially, it should be noted that Plaintiffs cannot even establish the elementary requirement of a representation, much less a "false representation." Plaintiffs also cannot, as a matter of law, "reasonably rely" on an alleged misrepresentation when said misrepresentation conflicts with documents presented to Plaintiffs when they entered into the transaction. *Id.*

Initially, Defendants note that Flagship's "failure to include the $16,000" on the HUD-1 was not a misrepresentation. Omitting a term from a document does not constitute an affirmative misrepresentation of material fact. Additionally, Plaintiffs cannot possibly "reasonably" rely on the omission of the $16,000 credit from their signed HUD-1. *Foremost Ins. Co. v. Parham*, 693 So. 2d 409. The fact that Plaintiffs were "first time home buyers" does not change the fact that

they were legally apprised that there was no $16,0000 credit, which was clearly indicated on the first page of the two (2) page statement, when they signed their HUD-1. (Exhibit "A"). Finally, Plaintiffs' alleged damages arise solely from their contractual relationship with Wachovia. "Proximate cause is an act or omission that in a natural and continuous sequence, unbroken by any new and independent causes, produces the injury and without which the injury would not have occurred." *See Crown Investments, Inc. v. Bryant*, 638 So. 2d 873, 878 (Ala. 1994). Wachovia's "alleged" failure to pay $16,000 was not caused by Flagship's "alleged" misrepresentation. Plaintiffs' fraud claim against Flagship fails as a matter of law on multiple levels, and thus Flagship was fraudulently joined in this matter.

    **4.    Plaintiffs' Claim for Fraudulent Suppression Against Flagship Fails As A Matter Of Law.**

Plaintiffs assert that Flagship "failed to include the [$16,000] on the settlement statement and failed to inform Plaintiffs that Defendant Wachovia would not pay them $16,000 as agreed for repairs." (*See* Plaintiffs motion to remand, p. 7). In Alabama, a valid suppression claim requires that "'(1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury.'" *Brown v. K&V Automotive, Inc.*, 946 So. 2d 458, 465 (Ala. Civ. App. 2006) (*citations omitted*). First, Flagship was the agent for Alethes as a matter of law, and thus owed no duty to Plaintiffs because there was no "special relationship" between Plaintiffs and Flagship. Moreover, Plaintiffs could have easily discerned the lack of the $16,000 credit from simply reading the HUD-1 they signed (and where they warranted that they had "carefully" read it). *Foremost Ins. Co. v. Parham*, 693 So. 2d 409. In fact, the HUD-1 disclosed that they would **pay** $2,159.91. Finally, it defies logic that Plaintiffs can legitimately claim that they were induced to close on the sale based on the omission of a contractual term for which they

specifically bargained for. In essence, Plaintiffs claim they were induced to sign the HUD-1 solely **because** their alleged $16,000 disbursement was left off the HUD-1. Flagship was fraudulently joined because Plaintiffs could have easily discerned the lack of a $16,000 payment on the HUD-1 by reading the documents they signed, and because Plaintiffs cannot be "induced," as a matter of law, to purchase the property based on the "omission" of a contractual provision in the HUD-1 that they themselves requested.

### III. CONCLUSION

For the reasons set forth above, this Court has jurisdiction over this case under 28 U.S.C. § 1332 because there is complete diversity among the parties and the amount in controversy is met. Accordingly, Defendants respectfully request that Plaintiffs' motion to remand be denied.

Dated this the 19th day of June, 2007.

Respectfully submitted,

/s/ William J. Long
Victor Hayslip (HAY019)
William J. Long IV (LON044)

Attorneys for Defendant
WACHOVIA BANK, NATIONAL ASSOCIATION

**OF COUNSEL:**

BURR & FORMAN LLP
3400 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

## CERTIFICATE OF SERVICE

    I hereby certify that on the <u>19th</u> day of <u>June, 2007</u>, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all properly registered parties and to the extent they are not registered with the Court's ECF system, they have been served by directing same to their office addresses via first-class, United States mail, postage prepaid:

Robert S. Thompson, Esq.
Tiffany N. Johnson, Esq.
The Law Offices of Robert Simms Thompson, P.C.
P.O. Box 830780
Tuskegee, AL 36083

Clyde Riley, Esq.
The Riley Law Firm
P.O. Box 531346
Birmingham, Alabama 35253

                                                s/ William J. Long
                                                OF COUNSEL

# U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT
## SETTLEMENT STATEMENT

**A.**

**B. TYPE OF LOAN:**
1. ☐ FHA  2. ☐ FmHA  3. ☒ CONV. UNINS.  4. ☐ VA  5. ☐ CONV. INS.

**6. FILE NUMBER:** 06-0042
**7. LOAN NUMBER:** 3006021400
**8. MORTGAGE INS CASE NUMBER:**

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "[POC]" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.
1.0  3/98  (06-0042.PFD/06-0042/8)

**D. NAME AND ADDRESS OF BORROWER:**
Ronald T. Crawford and
Paula M. Crawford
205 Edwards Drive
Tuskegee, AL 36083

**E. NAME AND ADDRESS OF SELLER:**
Wachovia Bank FKA Funb

**F. NAME AND ADDRESS OF LENDER:**
Alethes, LLC
8601 RR 2222, Bldg. 1, Ste. 150
Austin, TX 78730

**G. PROPERTY LOCATION:**
205 Edwards Drive
Tuskegee, AL 36083
Macon County, Alabama

**H. SETTLEMENT AGENT:**
Flagship Closing Services, LLC

**PLACE OF SETTLEMENT**
6707 Taylor Circle
Montgomery, AL 36117

**I. SETTLEMENT DATE:**
February 22, 2006

EXHIBIT A

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | 77,000.00 | 401. Contract Sales Price | 77,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 3,397.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/County Taxes   to | | 406. City/County Taxes   to | |
| 107. County Taxes   to | | 407. County Taxes   to | |
| 108. Assessments   to | | 408. Assessments   to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 80,397.00 | **420. GROSS AMOUNT DUE TO SELLER** | 77,000.00 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | 750.00 | 501. Excess Deposit (See instructions) | |
| 202. Principal Amount of New Loan(s) | 77,000.00 | 502. Settlement Charges to Seller (Line 1400) | 6,180.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first Mortgage | |
| 205. | | 505. Payoff of second Mortgage | |
| 206. | | 506. Deposit retained by broker | 750.00 |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/County Taxes   to | | 510. City/County Taxes   to | |
| 211. County Taxes   10/01/05 to 02/22/06 | 487.09 | 511. County Taxes   10/01/05 to 02/22/06 | 487.09 |
| 212. Assessments   to | | 512. Assessments   to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 78,237.09 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 7,417.09 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 80,397.00 | 601. Gross Amount Due To Seller (Line 420) | 77,000.00 |
| 302. Less Amount Paid By/For Borrower (Line 220) | ( 78,237.09) | 602. Less Reductions Due Seller (Line 520) | ( 7,417.09) |
| **303. CASH ( X FROM ) ( TO ) BORROWER** | 2,159.91 | **603. CASH ( X TO ) ( FROM ) SELLER** | 69,582.91 |

The undersigned hereby acknowledge receipt of a completed copy of pages 1&2 of this statement & any attachments referred to herein.
I HAVE CAREFULLY REVIEWED THE HUD-1 SETTLEMENT STATEMENT AND TO THE BEST OF MY KNOWLEDGE AND BELIEF, IT IS A TRUE AND ACCURATE STATEMENT OF ALL RECEIPTS AND DISBURSEMENTS MADE ON MY ACCOUNT OR BY ME IN THIS TRANSACTION. I FURTHER CERTIFY THAT I HAVE RECEIVED A COPY OF THE HUD-1 SETTLEMENT STATEMENT.

Borrower  *Ronald T. Crawford* (signed)
Ronald T. Crawford

*Paula M. Crawford* (signed)
Paula M. Crawford

Seller
Donna Whitney, Asst. Vice Pres. for Wachovia Bank FKA Funb

TO THE BEST OF MY KNOWLEDGE, THE HUD-1 SETTLEMENT STATEMENT WHICH I HAVE PREPARED IS A TRUE AND ACCURATE ACCOUNT OF THE FUNDS WHICH WERE RECEIVED AND HAVE BEEN OR WILL BE DISBURSED BY THE UNDERSIGNED AS PART OF THE SETTLEMENT OF THIS TRANSACTION.
Flagship Closing Services, LLC
Settlement Agent

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE: TITLE 18 U.S. CODE SECTION 1001 & SECTION 1010.

## L. SETTLEMENT CHARGES

| | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|
| 700. TOTAL COMMISSION Based on Price | $ 77,000.00 @ 6.0000 % | 4,620.00 | | |
| Division of Commission (line 700) as Follows: | | | | |
| 701. $ 1,540.00 to NS/VEST/4/U/1 Realty | Less Deposit Retained | 750.00 | | |
| 702. $ 2,310.00 to Southern Realty | | | | |
| 703. Commission Paid at Settlement | | | | 3,100.00 |
| 704. Commission | to US Real Estate | | | 770.00 |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | | |
| 801. Loan Origination Fee 1.0000 % | to Alabama Financial | | 770.00 | |
| 802. Loan Discount % | to Alethes, LLC | | | |
| 803. Appraisal Fee | to Alethes, LLC FBO Iverson Gandy POC $400.00 | | | |
| 804. Credit Report | to Alethes, LLC FBO Credco POC $30.00 | | | |
| 805. Underwriting Fee | to Alethes, LLC | | 495.00 | |
| 806. Tax Service Fee | to | | | |
| 807. Flood Certification Fee | to | | | |
| 808. Processing Fee | to Alabama Financial | | | 499.00 |
| 809. Document Prep Fee | to Alethes, LLC | | | 300.00 |
| 810. Courier Fee | | | | |
| 811. Yield Spread Premium | Alabama Financial by Alethes POC $770.00 | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | |
| 901. Interest From 02/22/06 to 03/01/06 @ $ 17.650000/day ( 7 days %) | | | 123.55 | |
| 902. Mortgage Insurance Premium for months to | | | | |
| 903. Hazard Insurance Premium for 1.0 years to Robinson Bryant | | | 725.00 | |
| 904. | | | | |
| 905. | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | | |
| 1001. Hazard Insurance | 3.000 months @ $ 60.42 per month | | 181.26 | |
| 1002. Mortgage Insurance | months @ $ 268.22 per month | | | |
| 1003. City/County Taxes | months @ $ per month | | | |
| 1004. County Taxes | 7.000 months @ $ 102.89 per month | | 720.23 | |
| 1005. Assessments | months @ $ per month | | | |
| 1006. | months @ $ per month | | | |
| 1007. | months @ $ per month | | | |
| 1008. Aggregate Adjustment | months @ $ per month | | -411.54 | |
| **1100. TITLE CHARGES** | | | | |
| 1101. Settlement or Closing Fee | to Flagship Closing Services, LLC | | | 350.00 |
| 1102. Abstract or Title Search Rev. | to Stephens, Millirons, Hammons, & Garrison, PC | | | 340.00 |
| 1103. Express Mail | to Flagship Closing Services, LLC | | | 39.00 |
| 1104. Title Insurance Binder | to and title insurance processing to FCS | | | |
| 1105. Document Preparation | to | | | |
| 1106. Attorney's Fee | to Stephens, Millirons, Harrison & Gammons | | | 300.00 |
| 1107. **Attorney's Fees for Prep. | to of Legal Documents | | | |
| (includes above item numbers: | ) | | | |
| 1108. Title Insurance | to Title Services Inc. for First American | | | 319.50 |
| (includes above item numbers:1104 | ) | | | |
| 1109. Lender's Coverage | $ 77,000.00 50.00 | | | |
| 1110. Owner's Coverage | $ 77,000.00 269.50 | | | |
| 1111. | | | | |
| 1112. | | | | |
| 1113. | | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | |
| 1201. Recording Fees: Deed $ 14.00; Mortgage $ 56.50; Releases $ | | | | 70.50 |
| 1202. City/County Tax/Stamps: Deed ; Mortgage | | | | |
| 1203. State Tax/Stamps: Revenue Stamps ; Mortgage 115.50 | | | 23.50 | 92.00 |
| 1204. | | | | |
| 1205. | | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | |
| 1301. Survey | to | | | |
| 1302. Pest Inspection | to | | | |
| 1303. | | | | |
| 1304. Doc Prep Fee/ Cancellation Fee | to Lateefah Muhammad, PC | | 770.00 | |
| 1305. | | | | |
| 1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K) | | | 3,397.00 | 6,180.00 |

By signing page 1 of this statement, the signatories acknowledge receipt of a completed copy of page 2 of this two page statement.

Flagship Closing Services, LLC
Settlement Agent

Certified to be a true copy.

( 06-0042 / 06-0042 / 14 )

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| RONALD T. CRAWFORD and ) | |
| PAULA M. CRAWFORD, ) | |
| ) | |
| PLAINTIFFS, ) | |
| ) | |
| VS. ) | CIVIL ACTION NUMBER: |
| ) | 3:07-cv-359-WHA |
| ALETHES, LLC, et al., ) | |
| ) | |
| DEFENDANTS. ) | |

## AFFIDAVIT OF DAVID E. SWECKER

My name is David E. Swecker. I am a resident of Jefferson County, Alabama, and I am over the age of nineteen (19) years. I am competent to testify to the matters contained herein and I offer this testimony based on my personal knowledge:

1. I am the Managing Director of the Birmingham, Alabama office of Alethes, LLC ("Alethes").

2. Alethes funded the mortgage for Ronald T. Crawford and Paula M. Crawford's ("the Crawfords") to purchase the home located at 205 Edwards Drive, Tuskegee, AL 36083.

3. Alethes received a number of documents as a part of the Crawfords' loan application. From those documents, Alethes approved the loan application and generated closing instructions which limited the seller's (Wachovia) contribution to the purchasers' closing costs to $2,310 and provided that there would be no cash back allowed to the purchasers/borrowers (the Crawfords).

4. FURTHER THE AFFIANT SAYETH NOT.

*[signature]*
David E. Swecker

**STATE OF ALABAMA** )

**COUNTY OF JEFFERSON** )

Before me, David E. Swecker, a Notary Public in and for said county in said State, personally appeared David E. Swecker, who being first duly sworn, makes oath that he has read the foregoing affidavit and knows the contents thereof, and that the facts alleged therein are true and correct.

Subscribed and sworn to before me this 6 day of June, 2007.

*[signature]*

Notary Public
My Commission Expires:
(SEAL)

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: FEB 11, 2011
BONDED THRU NOTARY PUBLIC UNDERWRITERS

- 2 -

CLOSING CONDITIONS
Loan No.: 3006021400
Borrower: RONALD T. CRAWFORD



FINAL 1003 SIGNED & DATED BY BORROWERS & LOAN OFFICER (VERSION 07/05)

SIGNED 4506

BORROWER CASH TO CLOSE NOT TO EXCEED $2,189

SIGNED RATE/LOCK AGREEMENT

CUSTOMER IDENTIFICATION DISCLOSURES

TIMELY PAYMENT REWARDS OPTION ADDENDUM & RIDER

SELLER CONTRIBUTIONS LIMITED TO $2,310

NO POC CREDITS OR EARNEST MONEY ALLOWED ON HUD-1.  NO CASH BACK TO BORROWER ALLOWED.

ANY 2005 TAXES DUE MUST BE PAID AT CLOSING.

RETURN BY COURIER/OVERNIGHT WITHIN 24 HOURS OF DISBURSEMENT THE CLOSED FILE WITH THE ORIGINAL NOTE AND TWO (2) CERTIFIED COPIES TO THE ATTENTION OF DEBBIE BURELL TO THE FOLLOWING ADDRESS: LENDING EDGE MORTGAGE, 601 VESTAVIA PARKWAY, SUITE 240, BIRMINGHAM, AL 35216.